UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OLD SLIP BENEFITS & INSURANCE SERVICES, LLC,

Plaintiff,

-against-

ALLSTATE INSURANCE COMPANY, REGINE MARIE NAPOLEON, BRITTANY CLEERE, MARC STEVENSON, and ALLISON ANN MCMAHON,

Defendants.

25-CV-1110 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff Old Slip Benefits & Insurance Services LLC brings this suit against Allstate Insurance Company to prevent an alleged unlawful termination of a franchise agreement between the parties. Before the case was removed to federal court, a state court judge issued a temporary restraining order preventing termination of that agreement in order to maintain the status quo pending resolution of Plaintiff's preliminary injunction motion. The TRO was initially issued eight months ago and reaffirmed again in January 2025 with no set expiration date. The case was then removed to federal court on February 7, 2025. Because the Federal Rules of Civil Procedure govern the expiration of the TRO, the TRO expired fourteen days later, and Plaintiff never sought to extend it before its expiration. The Court therefore agrees with Defendant that the TRO has expired. Nevertheless, the Court stays the effect of this decision to allow Plaintiff time to seek a stay before the Second Circuit. Additionally, and for the reasons stated below, the Court denies Defendant's request to maintain under seal a redacted manual that is relevant to this case and was already made public in another action.

## BACKGROUND

### I. Factual Background

Plaintiff Old Slip Benefits & Insurance Services LLC ("Old Slip") is owned by James Lukezic, a financial services professional who holds various securities licenses and began his own practice in 2016. ¶¶ 9–10.[1] In 2023, Lukezic decided to purchase the assets of two existing Allstate Insurance Company ("Allstate" or "Defendant") agencies in Westchester County, New York. ¶ 11. To do so, he formed Old Slip as the entity that would own and operate his new Allstate franchised business. *Id.* Old Slip entered into an Exclusive Allstate Franchise Agreement ("EA Agreement") with Allstate on February 21, 2024, which was effective on March 1, 2024. ¶ 18; ECF No. 15-5 at I.A. During the sales process, Lukezic informed Allstate that his Allstate agency would only be offering insurance products and that he owned a separate diversified financial services firm. ¶ 12. Additionally, Allstate's marketing led Plaintiff to believe that Allstate offered it a long-term relationship that would not be terminated unless Old Slip breached its obligations. ¶ 18.

The EA Agreement states that Old Slip "will not, either directly or indirectly, solicit, sell, or service insurance of any kind for any other company, agent, or broker, or refer a prospect to another company, agent, or broker, without the prior written approval of the Company." ECF No. 15-5 at I.E. The EA Agreement also states that the agreement may be terminated "by either party, with or without cause, upon providing ninety (90) days prior written notice to the other, or such greater number of days as required by law." *Id.* at XVII.B.2. Upon such written notice, the EA Agreement requires that Old Slip, upon Allstate's request, cease to act or to represent itself in any

[1] All paragraph references herein refer to the Amended Complaint at ECF No. 14-2 unless otherwise noted.

way as an agent or representative of Allstate. *Id.* Plaintiff began operations pursuant to the EA Agreement in March 2024. ¶ 11.

Within a month of Old Slip beginning operations, an Allstate salesperson demanded that Lukezic cease offering financial services products other than Allstate's and transfer all of his financial services customers to Allstate's separate financial service company. ¶ 32. The salesperson also informed Lukezic that he had to relinquish his FINRA licenses and bring all of his investment advisory clients to Allstate. *Id.* Lukezic declined to do so because such requests directly contrasted his discussions with Allstate during the sales process. ¶ 33. As a result, on June 25, 2024, Allstate issued Old Slip a termination letter for unauthorized brokering by maintaining an outside business interest. ¶ 36. The termination was scheduled to go into effect on September 30, 2024. ¶ 42. Fearing irreparable harm in the form of destruction of his business, loss of jobs, liability to third parties, loss of future opportunities, and a permanent negative mark on Lukezic's record with the Department of Financial Services, Plaintiff filed this action. *See* ¶¶ 42–43.

**II. Procedural History**

Plaintiff first brought this case in Westchester County Supreme Court on September 12, 2024, against Allstate and several individual defendants. ECF No. 14-1. That same day, Plaintiff moved for a temporary restraining order ("TRO") by order to show cause and for a preliminary injunction. ECF No. 15-1. On September 20, 2024, pending a hearing and determination of Plaintiff's motion for preliminary injunctive relief, Justice Linda Jamieson granted a TRO "in order to maintain the status quo and prevent irreparable harm." ECF No. 15-9 at 2.

Shortly thereafter, the individual defendants, along with Allstate, moved to dismiss Plaintiff's complaint for failure to state a claim, among other grounds. ECF No. 17-1. On

January 23, 2025, Justice Jamieson dismissed the claims against all individual defendants and dismissed all but two claims against Allstate. ECF No. 17-7. Despite the motion being fully briefed and after hearing oral argument, Justice Jamieson expressly did not rule on Plaintiff's preliminary injunction motion. Instead, she decided that "discovery regarding plaintiff's remaining claims against Allstate [was] warranted before the Court [could] render a determination on the merits of plaintiff's [preliminary injunction] motion." *Id.* at 29. In other words, Justice Jamieson intended to leave the TRO in place for an indefinite period.

On February 7, 2025, after all the individual defendants were dismissed, Allstate removed the case to this Court based on diversity jurisdiction. ECF No. 1. One month later, Defendant moved to declare the TRO expired, or alternatively, for an order dissolving it. ECF No. 12 ("TRO Mem."). Plaintiff opposed the motion and filed an alternative request that if the Court were to grant Defendants' motion that it stay the effectiveness of such a decision. ECF Nos. 21 ("TRO Opp."), 22 ("Stay Mem."). As part of the briefing of these issues, Defendant filed a largely redacted version of an Allstate Manual relevant to the parties' briefing. Defendant seeks to maintain that document under seal. *See* ECF Nos. 25 ("TRO Reply"), 26 ("Redact Mem."). The Court heard oral argument on the parties' motions on May 8, 2025, and on May 16, 2025, Plaintiff filed additional authority with the Court in response to the Court's inquiry at oral argument. ECF Nos. 44, 45.

**DISCUSSION**

The Court first addresses Defendant's motion for an order declaring that the TRO expired, finding that under Federal Rule of Civil Procedure 65, the TRO expired fourteen days after the case was removed to federal court. The Court nonetheless stays effect of its order so that

Plaintiff may seek relief from the Second Circuit. The Court then addresses and denies Defendant's request to file a redacted version of the Allstate Manual.

**I. The Temporary Restraining Order Has Expired**

As the Second Circuit has made clear, a "temporary restraining order issued by a state court prior to removal remains in force after removal no longer than it would have remained in effect under state law, but in no event does the order remain in force longer than the time limitations imposed by Rule 65(b), measured from the date of removal." *Uniformed Fire Officers Ass'n v. de Blasio*, 973 F.3d 41, 47 (2d Cir. 2020) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439–40 (1974)). Under Rule 65(b), TROs last no longer than 14 days, unless before the expiration the TRO is extended for good cause for up to another 14 days or unless the adverse party consents to a longer extension. In sum, "[t]emporary restraining orders entered prior to removal expire *at the earlier of* 14 days from the date of removal or the date set by the state court." *Herrick v. Grindr, LLC*, No. 17-CV-932 (VEC), 2017 WL 744605, at *2 (S.D.N.Y. Feb. 24, 2017) (emphasis added).

Here, this action was removed on February 7, 2025, and without any timely request for an extension, the TRO expired on February 21, 2025. As courts have cautioned, "[t]he plaintiff must be ever alert to this, so as to take whatever steps are necessary to satisfy the now-applicable federal requirements and assure that the TRO does not lapse before the preliminary injunction hearing comes on." *Carrabus v. Schneider*, 111 F. Supp. 2d 204, 211 (E.D.N.Y. 2000) (quoting David D. Siegel, *New York Practice* § 640 at 1105–06 (3d ed. 1999)). Plaintiff failed to request an extension of the TRO before it expired and likewise failed to timely seek a hearing in this Court on its preliminary injunction motion.

None of the arguments Plaintiff raises to escape this conclusion have merit. Plaintiff first argues, and the Court seriously considered, whether Justice Jamieson's order extending the TRO

indefinitely was effectively a preliminary injunction that should remain in place. When Justice Jamieson extended the TRO indefinitely, the preliminary injunction motion was fully briefed (including affidavits and other evidentiary submissions), and she had held oral argument on the motion. She appeared to have all the relevant briefing before her when she decided to extend the TRO further. She also determined that this preliminary relief should stay in place while the parties engaged in an indefinite period of discovery. Such an order has the hallmarks of a preliminary injunction in federal court. Plaintiff contends that in order for this court to give full effect to all actions and procedures accomplished in state court before removal, the Court must treat Justice Jamieson's decision as a preliminary injunction. ECF No. 24:4–25:24.

However, Justice Jamieson expressly declined to grant Plaintiff a preliminary injunction. Instead, she concluded that "discovery regarding plaintiff's remaining claims against Allstate [was] warranted before the Court [could] render a determination on the merits of plaintiff's motion." ECF 17-7 at 29. Justice Jamieson notably did not analyze the factors for preliminary injunction as required under the applicable procedural rule. *See* N.Y. C.P.L.R. 6312(c) (MCKINNEY 2019) ("[T]he court shall make a determination by hearing or otherwise whether each of the elements required for issuance of a preliminary injunction exists."). And, the fact that the TRO had no express end date does not conflict with any applicable state rule. *Compare* N.Y. C.P.L.R. 6313 (MCKINNEY 2019) ("Upon granting a temporary restraining order, the court shall set the hearing for the preliminary injunction *at the earliest possible time*.") (emphasis added), *with* FED. R. Civ. P. 65(b)(2) ("The order expires at the time after entry—*not to exceed 14 days*—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension.") (emphasis added). As such, the extension of the TRO pending further discovery did not, as Plaintiff argues, transform the TRO into the

equivalent of a federal court-enforceable preliminary injunction. TRO Opp. at 14. Instead, the state court's TRO simply remained in effect following Justice Jamieson's January 2025 decision. Plaintiff seeks to give full effect to Justice Jamieson's order, and construing the order as a TRO does that. *See* ECF No. 45 at 24:4–5; TRO Opp. at 13.

Plaintiff next urges the Court to retroactively extend the TRO for good cause. TRO Opp. at 14–27. However, as Rule 65 makes clear, a party must request an extension for good cause *before* the TRO expires. *See* FED. R. CIV. P. 65(b). Plaintiff failed to do so here. Even if Plaintiff had made a timely request, the Court, unless consent is obtained, can only extend a TRO for good cause for a "like period," which the Supreme Court has interpreted to mean only up to fourteen (14) additional days. *See In re Crim. Contempt Proc. Against Crawford, Warren*, 329 F.3d 131, 136 (2d Cir. 2003) (citing *Granny Goose*, 973 F.3d at 440 n.15); *de Blasio*, 973 F.3d at 47 ("We note that Rule 65(b)(2) was amended in 2009 to change the expiration of a TRO (unless extended) from ten to fourteen days."). That period expired long ago.

Lastly and relatedly, Plaintiff contends that the Court can extend the TRO indefinitely because Justice Jamieson already determined there was good cause to do so. But Plaintiff fails to cite any Federal Rule that would permit this Court to allow a TRO to remain in place indefinitely without the consent of the opposing party. As the Supreme Court made clear, although Plaintiff has a right to maintain the relief it obtained in state court after removal, Defendant "[b]y the same token. . . ha[s] a right to the protections of time limitation in Rule 65(b) once the case was removed to federal court." *Granny Goose*, 973 F.3d at 439. Those time limits expressly prohibit the result Plaintiff seeks here. Therefore, Defendant's motion is granted. The Court will, however, stay the effect of this decision for two weeks to allow Plaintiff to seek a stay before the Second Circuit. The Court denies Plaintiff's requested relief for a longer stay pending appeal.

Although allowing the termination of the parties' agreement will certainly harm Plaintiff and the livelihood of its employees, all other factors weigh against Plaintiff's requested stay. *See New York v. United States Dep't of Homeland Sec.,* 974 F.3d 210, 214 (2d Cir. 2020) ("[A] stay is not a matter of right, even if irreparable injury might otherwise result; rather, a stay is an exercise of judicial discretion, and the party requesting a stay bears the burden of showing that the circumstances justify an exercise of discretion.") (cleaned up) (internal citation and quotation marks omitted).

## II. Defendant's Motion to File a Redacted Version of the EA Manual Is Denied

Defendant seeks leave to file a redacted version of Exhibit A to the TRO Reply, which is a copy of Allstate's Exclusive Agency Independent Contractor Manual ("EA Manual"). Redact Mem. at 1. In its TRO Reply, Allstate cites to three pages of the EA Manual's forty-eight (48) pages and contends that the rest of the document contains "highly confidential and commercially sensitive information about a variety of subjects important to Allstate's relationship with its exclusive agents." *Id.* Defendant asserts that the information in the EA Manual could cause Allstate harm by providing competitors with insight into its relationship with its exclusive agents. *Id.* at 2. It further asserts that Allstate's interest in protecting its confidential business information weighs in favor of the redactions and that the public interest in access is outweighed as the redacted portions are not necessary to evaluate Allstate's pending TRO motion. *Id*.

Plaintiff opposes Defendant's request, asserting that Allstate has failed to satisfy its heavy burden to show that the entire remaining portions of the EA Manual constitute a trade secret or confidential information, and that the asserted harm outweighs the presumption of public access. ECF No. 33 at 2. The Court agrees. Here, the exhibit was filed in connection with Defendant's briefing on the validity of the TRO and is likely to be referenced again in this matter. The parties'

dispute centers their exclusive agency relationship, and it is natural that the EA Manual will be relevant to this case's resolution. *See* ECF No. 45 at 43:22–24. As such, the Court concludes that the document is a judicial document, and thus the presumption of public access applies. *See Sec. & Exch. Comm'n v. Telegram Grp. Inc.*, No. 19-CV-9439 (PKC), 2020 WL 3264264, at *1 (S.D.N.Y. June 17, 2020) (noting that documents filed in connection with motions are subject to a substantial presumption of public access).

"[S]pecific business information and strategies [that] may provide valuable insights into a company's current business practices that a competitor would seek to exploit" warrants confidential treatment. *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (internal citation and quotation marks omitted). Here, however, Defendant redacts nearly the entire document without any particularity. *Cf. id.* (authorizing plaintiffs' proposed redactions, which were generally limited to specific business information and strategies). Additionally, a prior version of the EA Manual, which substantially mirrors the current version, has already been made public. *Khalil v. Allstate*, No. 20-CV-09409 (C.D. Calif. 2022), ECF No. 63-3. Defendants fail to explain what competitive harm exists where most of the document is already public, and public documents may not be redacted. *See In re Telegraph Media Grp. Ltd.*, No. 23-MC-215 (JGLC), 2023 WL 5770115, at *6 (S.D.N.Y. Sept. 6, 2023) (denying a motion to seal information that was already a matter of public record); *Louis Vuitton*, 97 F. Supp. 3d at 511 ("[T]here is no justification for keeping the information that has already been public under seal."). As such, the Court finds that the proposed redactions are unwarranted and Defendant's motion for leave to file a redacted version of the EA Manual is DENIED.

**CONCLUSION**

For the foregoing reasons, the Court finds that the state court's TRO has expired. The Court, however, stays the effect of this Order until June 5, 2025, at Plaintiff's request, to permit Plaintiff to seek an emergency stay from the Second Circuit. Defendant's motion to file a redacted version of Exhibit A to their TRO Reply is DENIED, and Defendant is hereby ORDERED to file the unredacted version of Exhibit A to their TRO Reply by no later than May 26, 2025. The Clerk of Court is respectfully directed to terminate ECF Nos. 12, 22, and 26.

Dated: May 21, 2025
New York, New York

SO ORDERED.

Jessica Clarke

JESSICA G. L. CLARKE
United States District Judge