# 25-1320
# 25-1417

## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

OLD SLIP BENEFITS & INSURANCE SERVICES, LLC,

*Plaintiff-Appellant,*

-against-

ALLSTATE INSURANCE COMPANY, REGINE MARIE NAPOLEON, BRITTANY CLEERE, MARC STEVENSON, ALLISON ANN MCMAHON,

*Defendants-Appellees.*

*On appeal from Orders of the U.S. District Court for the Southern District of New York*

**BRIEF FOR PLAINTIFF-APPELLANT & SPECIAL APPENDIX**

**WUERSCH & GERING**
Wall Street Plaza
88 Pine Street, 20th Floor
New York, New York 10005
(212) 509-5050
David.azrin@wg-law.com
*Attorneys for Plaintiff-Appellant*

David Azrin, Esq.,
*on the brief*

# TABLE OF CONTENTS

**Page(s)**

I. PRELIMINARY STATEMENT ........ 1

II. JURISDICTIONAL STATEMENT ........ 1

III. STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ........ 1

IV. FACTUAL BACKGROUND AND PROCEDURAL HISTORY ........ 2

V. STANDARD OF REVIEW ........ 14

ARGUMENT ........ 14

VI. APPELLATE JURISDICTION ........ 14

VII. THE STATE COURT'S ORDERS DID NOT EXPIRE BECAUSE RULE 65(b)(2) DOES NOT APPLY AND THE MOTION TO DISSOLVE SHOULD HAVE BEEN DENIED ........ 16

VIII. ALTERNATIVELY, THE DISTRICT COURT HAD JURISDICTION TO CONDUCT A PRELIMINARY INJUNCTION HEARING AND ABUSED ITS DISCRETION IN DECLINING TO CONSIDER THE MOTION FOR PRELIMINARY INJUNCTION ........ 23

IX. CONCLUSION ........ 26

CERTIFICATION OF COMPLIANCE ........ 28

SPECIAL APPENDIX ........ SpA.1-SpA16

## TABLE OF AUTHORITIES

**Cases**

*Alloyd Gen. Corp. v. Bldg. Leasing Corp.*,

361 F.2d 359 (1st Cir. 1966) ....................................................................16

*Allstate Ins. Co. v. Fougere*,

2019 WL 4776986 (D. Mass. 2019)...........................................................5

*Am. Sys. Consulting, Inc. v. Devier*,

514 F.Supp.2d 1001 (S.D. Ohio 2007).....................................................22

*Arizona v. California*,

460 U.S. 605 (1983) ..................................................................................17

*Bonechi v. Irving Weisdorf & Co.*,

1995 WL 731633 (S.D.N.Y. 1995)...........................................................19

*Carson v. Am. Brands, Inc.,*

450 U.S. 79 (1981) ....................................................................................14

*D.H. Blair & Co. v. Gottdiener*,

462 F.3d 95 (2d Cir. 2006).........................................................................17

*Doe v. New York City Dept. of Social Services*,

709 F.2d 782 (2d Cir. 1983), *cert. denied*, 464 U.S. 864 (1983)..........................18

*Does 1-9 v. Kappa Alpha Theta Fraternity Inc.*,

2022 WL 3448638 (N.D. Tex. 2022) .......................................................22

*GGC Intl'l Ltd. v. Ver*,

2025 WL 81319 (S.D.N.Y. 2025)....................................................23, 24

*Gilead Scis., Inc. v. Safe Chain Sols., LLC*,

684 F.Supp.3d 51 (E.D.N.Y. 2023)....................................................15

*Granny Goose Foods v. Teamsters*,

415 U.S. 423 (1974) ....................................................1, 15, 20, 21

*In re Crim. Contempt Proc. Against Crawford*,

133 F.Supp.2d 249 (W.D.N.Y. 2001) ....................................15, 19, 20

*In re Crim. Contempt Proc. Against Gerald Crawford,*

329 F.3d 131 (2d Cir. 2003) ....................................................23

*New York State Nat. Org. for Women v. Terry*,

886 F.2d 1339 (2d Cir. 1989), *cert. denied*, 495 U.S. 947 (1990)........................25

*New York v. United States Dep't of Homeland Sec.*,

475 F.Supp.3d 208 (S.D.N.Y. 2020)....................................................26

*Pan Am. World Airways, Inc. v. Flight Engineers' Int'l Ass'n, PAA Chapter, AFL-CIO*, 306 F.2d 840 (2d Cir. 1962)....................................................15

*Romero v. Allstate Ins. Co.*,

1 F.Supp.3d 319 (E.D. Pa. 2014) ....................................................5

*Rosenberg v. MetLife, Inc.*,

8 N.Y.3d 359 (2007) ....................................................9

*S.E.C. v. Variable Annuity Co.*,

359 U.S. 65 (1959) ............................................................................7

*Sampson v. Murray*,

415 U.S. 61 (1974) ............................................................15, 19, 20

*Santos v. Reverse Mortg. Sols., Inc.*,

2012 WL 4891597 (N.D. Cal. 2012)..................................................22

*Sun Forest Corp. v. Shvili*,

152 F.Supp.2d 367 (S.D.N.Y. 2001)..................................................23

*Tehan v. Disability Mgmt. Servs., Inc.*,

111 F.Supp.2d 542 (D.N.J. 2000) .....................................17, 18, 21, 22

*Torah Soft Ltd. v. Drosnin*,

224 F.Supp.2d 704 (S.D.N.Y. 2002)..................................................21

*United States v. Rodgers*,

101 F.3d 247 (2d Cir. 1996), *cert. denied*, 520 U.S. 1188 (1997)........................25

*Weight Watchers Int'l, Inc. v. Luigino's, Inc.*,

423 F.3d 137 (2d Cir. 2005) ..............................................................14

*Winne v. Equitable Life Assurance Society of the U.S.*,

315 F.Supp.2d 404 (S.D.N.Y. 2003)....................................................7

*Xtria, LLC v. Int'l Ins. All., Inc.*,

2009 WL 4756365 (N.D. Tex. 2009) ..................................................22

**Statutes**

28 U.S.C. § 1292(a) .......... 1

28 U.S.C. § 1332 .......... 1

28 U.S.C. §1450 .......... 17, 23

**Rules**

Fed. R. App. P. 32(a)(7)(B) .......... 28

Fed. R. App. P. 32(a)(7)(C) .......... 28

Fed R. Civ. P. 65 .......... passim

Fed. R. Civ. P. 65(b) .......... 2, 19, 20, 21

N.Y. C.P.L.R. § 6313 .......... 9

NY Comp. Codes R. & Regs. Tit. 11 § 20.2 .......... 8

**Secondary Sources**

2 *Cyc. of Federal Proc.* § 3:130 (3d ed. 2025) .......... 18

2 *Cyc. of Federal Proc.* § 3:131 (3d ed. 2025) .......... 23, 24

2 *N.Y. Prac., Com. Litig. in New York State Courts* § 10:32 (5th ed. 2024) .......... 17

16 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, *Fed. Prac. & Proc. Juris*. § 3921.2 (3d ed. 2025) .......... 26

16 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, *Fed. Prac. & Proc. Juris*. § 3922.1 (3d ed. 2025) .......... 16

16 J. MOORE AT AL., *Moore's Federal Practice*, § 107.31[3] (3d ed. 2008).......17

18 J. MOORE ET AL., *Moore's Federal Practice* § 134.22[3][c]i] (3d ed. 1999)…………………………………………………………………...18, 21

Hon. C. Timothy Corcoran III, *Preliminary Injunctions and Temporary Restraining Orders*, View From the Bench, Tampa Bay Bankruptcy Association, The Cramdown ........................................................................................25

JOHN A. GEBAUER ET AL., 29A *Fed. Proc., L. Ed.* §69:97 ...............................18

## I. PRELIMINARY STATEMENT

Plaintiff-Appellant Old Slip Benefits & Insurance Services LLC ("Old Slip" or "Appellant") appeals from decisions by the United States District Court for the Southern District of New York (Clarke, J.) holding that the restraints imposed by a state court judge prior to removal expired and that it did not have jurisdiction to hear the motion for preliminary injunction.

## II. JURISDICTIONAL STATEMENT

The court below had subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

This Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 1292(a). The decisions were entered in the court below on May 21, 2025 and June 2, 2025. (SpA.1-SpA.10; SpA.12-SpA.15.)

## III. STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether the January 23, 2025 Decision and Order by Westchester County Commercial Division Justice Linda Jamieson on Old Slip's Motion for Preliminary Injunction, informed by a full hearing and presentation of the evidence and arguments on each of the elements for preliminary injunction, became an order of the federal court when the case was removed, as mandated by 28 U.S.C. § 1450, and did not fall within Rule 65(b)(2) or the category of cases contemplated by *Granny Goose Foods v. Teamsters*, 415 U.S. 423 (1974)?
2. Whether the District Court had the authority, which it claimed that it did not, to make its own determination as to whether there was good cause to maintain the

restraints in place, when the issue was brought before the court, on Allstate's motion which asked the court to either declare that the restraints had expired, or alternatively, to make a determination whether there was good cause to maintain the restraints?

3. Whether, in the event that it is determined that the state court's January 23, 2025 Order was a temporary restraining order to which Rule 65(b) did apply, the preliminary injunction motion was still pending in the federal court, and the District Court should have proceeded to conduct a preliminary injunction hearing?

## IV. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On September 12, 2024, Plaintiff Old Slip Benefits & Insurance Services, LLC filed suit in Westchester County Supreme Court, asserting causes of action for breach of contract, violation of the implied covenant of good faith and fair dealing, violation of the New York Franchise Sales Act, unconscionability, reformation, equitable estoppel, and tortious interference with contracts and relationships, against Defendant Allstate Insurance Company, as well as four of its employees. (A.12-A.51.[1]) Plaintiff simultaneously filed a Motion for Preliminary Injunction and Temporary Restraining Order brought by order to show cause, with supporting affidavits and memorandum of law. (A.52-A.89.)

[1] All references to "A" are to the Appellant's Appendix filed herewith.

James Lukezic ("Lukezic"), Old Slip's owner, has established a nationwide financial services capital management and investment advisory business. (A.56-A.57.). He and his companies hold an SEC Registered Investment Advisor license, a Broker/Dealer license, and accredited investment fiduciary, with Series 7, 24, 63, 65, and 66 FINRA securities licenses. (A.57.)

In 2023, Lukezic began discussions with Allstate about becoming an Allstate insurance agency franchisee, to sell Allstate's insurance products, and to cross-sell Allstate's insurance products to the plan participants of his investment advisory business' existing clients. (A.58.)

In March 2024, Lukezic purchased the accounts of two then-existing Allstate agencies, consolidated them into one agency, leased space in White Plains, hired and trained employees, and began managing those accounts and selling Allstate insurance products, from the Allstate agency location in White Plains. (A.58.) He planned to purchase the accounts of additional Allstate agencies, and to consolidate them into the business. (A.58.) Lukezic relocated his family to Westchester from Florida where they resided, to establish and operate the agency. (A.58.)

Since March 2024, he has been successfully operating the agency, providing excellent customer service with fully trained staff, and generating significant premiums for Allstate, with no performance issues. (A.58.) During the franchise sales process, Lukezic made it clear to Allstate that he would continue his investment

advisory business and that he would be marketing Allstate insurance products to his investment advisory clients' plan participants, a strategy that Allstate supported. (A.58-A.59; A.432-A.434.) Allstate was aware that he owned a separate investment advisory business, and that he would be marketing Allstate insurance products to his clients. Lukezic made this clear in all of his communications with Allstate during the recruitment, onboarding and training process, during the fall of 2023 until he signed in February 2024. Lukezic purchased the accounts of two Allstate insurance agents, Anthony Fava and Alfred Buglione, both of whom had been Allstate agents for more than 30 years. Both of these agents confirm that, based on their conversations with the Allstate salesperson Regine Napoleon, it was clear Allstate was fully well aware that Lukezic had his own separate investment advisory business and that he planned to continue his investment advisory business and to sell Allstate insurance products to his network of investment clients. (A.432-A.434.)

Accordingly, Allstate never suggested that he would need to transfer his FINRA licenses to Allstate, and never asked him to sign the required paperwork to effectuate such a transfer. (A.58-A.59.)

This is because the agreement was to sell Allstate insurance products, and ***not*** investment products. The plain language of the Allstate Agency agreement only restricted Plaintiff from offering "insurance" products of other companies, and not other non-insurance investment products. Section 1[E] of the Allstate Agency

agreement is limited to the sale of "insurance", and Section 9 of the Key Person Confidentiality Non-Competition Agreement, is likewise limited to the sale of "insurance." (A.59; A.70; A.83.)

This plain reading of the contract is bolstered by Allstate's own March 23, 2000 set of Questions and Answers ("Q & As") regarding this widely used form of agreement. (A.59-A.60.) There, Allstate explicitly stated that the non-competition provisions do not apply to "*non-insurance*" products, and that offering non-insurance products to customers is "*not a violation of the noncompete provision.*" *Romero v. Allstate Ins. Co.*, 1 F. Supp. 3d 319, 350 (E.D. Pa. 2014) (emphasis added). *See also Allstate Ins. Co. v. Fougere*, 2019 WL 4776986, at *13 (D. Mass. Sept. 30, 2019) ("the unambiguous language of the EA Agreement provides that the Agency is not to sell *insurance* policies of any competitors").

During the sales and recruitment process, Allstate continuously assured Plaintiff that their relationship was long-term, that it could not be terminated without a serious reason, and that once you become an Allstate agent you never leave and that most of its agents had remained with Allstate for more than 25 years. (A.60.) Allstate emphasized its commitment to helping agents in every way and assured him that it would take care of everything needed to operate the agency. From about December 2023 to February 2024, Lukezic was required to undergo extensive mandatory training on Allstate's system to be an Allstate agent. (A.60.) Additionally, Allstate

required him to make purchases to operate as an Allstate franchised business, which Lukezic paid to Allstate and its affiliated companies. (A.61.)

***Allstate Illegally Terminated the Agency Agreement***

Incredibly, within thirty days after his agency was established, Allstate's salesperson Regine Napoleon approached Lukezic and demanded that he transfer all of his financial services customers to Allstate's separate financial services company, and cease offering financial services products other than Allstate financial services products to his financial services customers. Napoleon told him to relinquish his FINRA licenses and bring all of his investment advisory clients to Allstate's separate financial services company, Allstate Financial Services ("AFS"). (A.63.)

In response, Lukezic explained that this was never part of the deal and that it would be impossible to do so because Allstate's AFS platform is not equipped to handle his more sophisticated accounts. This is because Allstate's financial services division only offers one type of financial services product to its customers, namely a Fidelity Brokerage Account, which was not suitable for his customers. Under FINRA rules, as a broker dealer, he has a fiduciary duty to offer a range of products to his clients to ensure they end up with a product that is "suitable" to them.[2]

[2] FINRA Rule 2111(a) provides "A member or an associated person must have a reasonable basis to believe that a recommended transaction or investment strategy involving a security or securities is suitable for the customer, based on the information obtained through the reasonable diligence of the member or associated person to ascertain the customer's investment profile. A customer's investment profile includes, but is not limited to, the customer's age, other investments, financial situation and needs, tax status, investment objectives, investment experience, investment time

Additionally, the agency agreement states ***nothing*** about FINRA or investment advisory or broker/dealer services and only deals with insurance products. The demand would significantly hurt his customers and would have an anticompetitive effect, forcing his customer to only purchase the Fidelity product offered by AFS, rather than a range of products his affiliates offer. (A.63-A.64; A.70-A.85.)

On June 25, 2024, Allstate issued a termination letter which claimed it was terminating the agreement ***for cause*** due to "***unauthorized brokering***." (A.64; A.87-A.88.) Allstate unjustifiably claimed he violated the Agency Agreement by maintaining an "outside business interest". The termination was unjustified because the plain language of the Allstate Agency Agreement only restricted Plaintiff from offering insurance products of other companies, and not other non-insurance investment products which Plaintiff's affiliates offer through their regulated investment advisory business and broker-dealer business. (A.64-A.65.) Lukezic's investment related companies offer investment products and variable annuities (but not fixed annuities). (A.57.) Such variable annuities are ***not*** insurance.[3] Rather, they are considered securities.[4]

Accordingly, Allstate's termination of his agreement, on the ground that he was

---

horizon, liquidity needs, risk tolerance, and any other information the customer may disclose to the member or associated person in connection with such recommendation."

[3] *S.E.C. v. Variable Annuity Co.*, 359 U.S. 65, 72-73 (1959).

[4] *Winne v. Equitable Life Assurance Society of the U.S.*, 315 F. Supp. 2d 404, 408 (S.D.N.Y. 2003).

engaged in "unauthorized brokering", was unsupported by the agreement, because the Allstate Agency Agreement did not prohibit Plaintiff from offering and selling other non-insurance products including variable annuities. There was simply no legal justification for Allstate's demands or termination of the agreement. Any suggestion that Plaintiff engaged in improper conduct is false and would cause irreparable harm to him, his business and reputation, and jeopardize his other licenses. (A.409.)

***Need to Maintain the Status Quo***

If implemented, the threatened shutdown of his Allstate insurance franchised business will cause irreparable harm to Plaintiff, because Plaintiff's entire business is the offering and sale of Allstate insurance products. The termination will destroy its business, and result in the loss of jobs of Plaintiff's employees, liability to third parties, and the loss of future opportunities for purchase of additional agency accounts. (A.66-A.68.)

Importantly, the termination will cause irreparable harm because Allstate claimed it terminated Plaintiff for cause because it was engaging in "unauthorized brokering". State insurance law requires Allstate to notify the Department of Financial Services of the termination and the reasons for the termination. Insurance Law § 2112, 11 NYCRR § 20.2. The false public accusation of "unauthorized brokering" will have irreversible repercussions for Plaintiff and its owner Lukezic

and will be a permanent negative mark on his record. It will cause other companies to terminate their selling agreements with Plaintiff, making it impossible to find another insurance agency, and may result in a Department of Financial Services investigation. Plaintiff will not have the right to monetary compensation for the false accusation, because Allstate may enjoy absolute immunity for filing such false reports. *Rosenberg v. MetLife, Inc.*, 8 N.Y.3d 359 (2007). The restrictions which Allstate is attempting to impose would violate his agreements with other investment companies, and will have anti-competitive effects, by interfering with his customers' freedom to choose their broker and investments. (A.67.)

Accordingly, based on these undisputed demonstrated facts, on September 19, 2024, after notice (A.89), the parties attended an in-person hearing before Judge Linda Jamieson and presented oral argument to the Court. (A.90-A.116.) On the same day, the court entered a TRO, preventing Allstate from effectuating the termination of Plaintiff's Agency Agreement until a determination on Plaintiff's motion for preliminary injunctive relief, finding that the order was necessary "***to maintain the status quo and prevent irreparable harm***." (A.117-A.118) (emphasis added.) Under New York law, CPLR § 6313, the order continued to be effective until the court determined the preliminary injunction motion.[5]

By October 16, 2024, the parties fully briefed the motion for preliminary

[55] N.Y. C.P.L.R. 6313 (McKinney), Commentary C6313:1.

injunction, which was taken under submission. (A.4.) On November 21, 2024, the parties appeared for a case management conference. (A.276-A.288.) On October 15, 2024, Defendants filed a motion to dismiss which was fully briefed by December 16, 2024. (A.4-A.5.) On November 4, 2024, Defendant Stevenson filed a motion to dismiss for lack of personal jurisdiction, which was fully briefed by November 20, 2024. (A.5.)

On December 10, 2024, Plaintiff filed a motion to expand the scope of the restraining order and the requested injunctive relief with substantial additional facts. (A.5; A.220-A.275.) Specifically, Plaintiff detailed how after months of being told that Plaintiff was going to be entering into a long term relationship with Allstate, Allstate unlawfully delayed in providing Plaintiff with the agreement. (A.230.) Even after the delay in providing the agreement, Allstate pressured Plaintiff and demanded that the agreement be signed right away in order to secure the loan for the business. (A.230.) Plaintiff also provided details about Allstate's efforts to circumvent the state court's order restraining Allstate from effectuating the termination and destroy Plaintiff's business. (A.235.)

On January 5, 2025, Plaintiff filed an additional affidavit with evidence that the parties never intended for Plaintiff to sell Allstate's investment products because Allstate never submitted the proper forms to effectuate those services. (A.120.) The affidavit provided further details concerning Allstate's representations during the

sales process about the nature of the relationship. (A.125-A.126.)

By October 2024, the motion for preliminary injunction was fully briefed and the parties were conducting discovery. At the November 21, 2024 case management conference, Allstate's counsel announced that the parties had fully briefed the motion for preliminary injunction and were ready to argue it. ("[W]e were here…to have oral argument on the motion for the preliminary injunction…We have now fully briefed it and we are ready to argue [it]") (A.285.) The court scheduled oral argument on the motion to take place in January. On January 8, 2025, the parties appeared before the court on all of the pending motions and presented oral argument on the motions, including whether Plaintiff had demonstrated irreparable harm if the injunctive relief was not maintained. (A.319-A.352.)

On January 23, 2025, the state court upheld Plaintiff's claim for breach of the implied covenant of good faith and fair dealing, stating that Plaintiff had the right to challenge the termination decision based on a breach of implied covenant of good faith and fair dealing claim, regardless of the "without cause" clause in the agreement, specifically rejecting Allstate's argument that the termination without cause provision of the agency agreement barred the claim. (A.353-A.382.)

Critically, with respect to the motion for preliminary injunction, after examining the evidence submitted by the parties, and hearing extensive argument, the state court **made a determination** that good cause existed to **<u>extend</u> the restraint,** to

give the parties the opportunity to conduct further discovery. (A.381.) The state court specifically referred to its September 19, 2024 Order, which found that the injunctive relief was necessary "to maintain the status quo and prevent irreparable harm." (A.117-118; A.381.)

The state court judge made this decision after considering all of the extensive affidavits filed by the parties, including four affidavits of James Lukezic (A.56-A.68; A.119-A.126; A.127-A.132; A.220-A.248; A.249-A.275), extensive briefing by the parties (A.4-A.5), and after the state court conducted four separate court hearings and three oral arguments on the request for injunctive relief. (A.90-A.116; A.276-A.288; A.302-A.318; A.319-A.352.)

On February 7, 2025, Defendants removed this action to federal court (A.383), after the state court dismissed the non-diverse defendants. (A.353-A.382.)

**Federal Court Proceedings and This Appeal**

After removal, on March 14, 2025, Allstate filed in the District Court a Motion for an Order Declaring that the Temporary Restraining Order Has Expired or, Alternatively, for an Order Dissolving the Temporary Restraining Order.

In its opposition and at oral argument on May 8, 2025, Old Slip argued that the state court's orders remained in place because the state court orders were federalized when the action was removed, 28 USC §1450, Justice Jamieson had made a decision on the preliminary injunction after considering all of the elements required for a

preliminary injunction, and finding good cause for the restraints to remain in effect to prevent irreparable harm. (A.396-A.441; A.469-A.470.)

On May 21, 2025, despite the state court's finding and ruling based on the extensive briefing, evidence, and oral argument, the District Court Judge issued an order dissolving the restraints, citing Rule 65 and *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423 (1974), which dealt with a situation where a state court action was removed after an ex parte temporary restraining order was entered in state court and before the state court had the opportunity to hear the preliminary injunction. (SpA.1-SpA.10.) On June 2, 2025, Judge Clarke declined the invitation to make her own good cause determination, or to proceed to hold a preliminary injunction hearing, finding that she did not have authority to do so, stating that – in contradiction of her own earlier May 21, 2025 order – Rule 65 only "applies for temporary restraining orders issued without notice, which is ***inapplicable*** here." (SpA.12-SpA.15.) (emphasis added).

Judge Clarke stayed the effect of her May 21, 2025 order to permit Plaintiff-Appellant to seek an emergency stay from this Court. (A.498.) On May 21, 2025, Plaintiff-Appellant moved to stay the effect of the District Court decision pending appeal. (SpA.10). On May 30, 2025, Justice Kahn granted Plaintiff-Appellant's stay of the district court's order pending determination of the motion. (SpA.11.) The motion was then scheduled to be heard on June 24, 2025 before a motions panel

consisting of Justices Bianco, Lee, and Nathan. Four days before the hearing, on June 20, 2025, the Motions Panel decided that the motion would be deferred and decided together with the merits of the appeal, and that, in the interim, the stay of Judge Clarke's May 21, 2025 order would remain in place. (SpA.16.)

## V. STANDARD OF REVIEW

This Court reviews a district court's legal rulings *de novo* and for abuse of discretion. *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 141 (2d Cir. 2005). A district court abuses its discretion when it rests its decision on a clearly erroneous finding of fact or makes an error of law. *Id.* (internal citations omitted).

Here, the District Court abused its discretion when it voided the state court's September 18, 2024 order and January 23, 2025 order which had found that, absent the entry of injunctive relief, the Plaintiff's business will suffer irreparable harm. Alternatively, the District Court abused its discretion when it found it did not have jurisdiction to make its own good cause determination or to proceed to hear the preliminary injunction motion.

# ARGUMENT

## VI. APPELLATE JURISDICTION

This Court may exercise appellate jurisdiction over the merits of a temporary restraining order when it might have a serious, perhaps irreparable, consequence. *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 84 (1981). In addition, when a restraining order becomes the equivalent of a preliminary injunction, like here, it is appealable.

*Sampson v. Murray*, 415 U.S. 61, 88 (1974); *Pan Am. World Airways, Inc. v. Flight Engineers' Int'l Ass'n, PAA Chapter, AFL-CIO*, 306 F.2d 840, 843 (2d Cir. 1962) ("the continuation of the temporary restraining order beyond the period of statutory authorization, having, as it does, the same practical effect as the issuance of a preliminary injunction, is appealable"); *In re Crim. Contempt Proc. Against Crawford*, 133 F. Supp. 2d 249, 256 (W.D.N.Y. 2001) ("This is not a case like *Granny Goose* where the party being enjoined was left to guess at the intended duration of the TRO.. . . [W]here, as here, a district court expressly extends a TRO issued after notice and a hearing beyond the statutory 20–day limit in Rule 65(b), the TRO does not cease to exist after the 20 days have expired, but instead becomes an enforceable preliminary injunction subject to appellate review"); *Gilead Scis., Inc. v. Safe Chain Sols., LLC*, 684 F. Supp. 3d 51, 64 (E.D.N.Y. 2023) (same). Significantly, the *Sampson* majority rejected the dissent's argument that the grant or denial of a temporary restraining order extended beyond the time limits of Rule 65 is not appealable. *Sampson*, 415 U.S. at 98. At the same time, the dissent conceded that, if the opposing party had moved to vacate the order under Rule 65, the district court could have proceeded to resolve the issues presented by the application for the preliminary injunction, and the end result would have been an appealable order. *Id.* at 100.

In *Alloyd Gen. Corp. v. Bldg. Leasing Corp.*, 361 F.2d 359, 362 (1st Cir. 1966) the First Circuit addressed this situation directly, specifically holding that a district court order which dissolved a restraining order because it expired was appealable under Section 1292(a)(1). Wright & Miller, 16 *Fed. Prac. & Proc. Juris*. § 3922.1 (3d ed. 2025) (commenting a strong basis for the decision in *Alloyd* was that the district court "dissolved an order that had de facto become a preliminary injunction").

Here, Appellant twice demonstrated that absent the restraint, there would be significant irreparable consequences. (A.117-A.118; A.353-A.382.) After making that showing, the state court not only issued the restraint, but also determined that it was necessary to maintain the restraint. These state court decisions had the same practical effect as the issuance of a preliminary injunction and are thus appealable.

## VII. THE STATE COURT'S ORDERS DID NOT EXPIRE BECAUSE RULE 65(b)(2) DOES NOT APPLY AND THE MOTION TO DISSOLVE SHOULD HAVE BEEN DENIED

Rule 65 does not apply because there was already a contested adversary hearing on the preliminary injunction motion before the case was removed to federal court. Once the case was removed to federal court, the originating state court's orders became federalized, as if they were entered directly by the federal court. 28 U.S.C.

§1450;[6] *see generally Moore's Federal Practice*, § 107.31[3] (3d ed. 2008) ("A district court takes a removed action as it existed in state court at the time of removal and must give effect to all actions and procedures accomplished in state court before removal"); 2 *N.Y. Prac., Com. Litig. in New York State Courts* § 10:32 (5th ed. 2024) (same).

Accordingly, the district court "must give effect to all actions and procedures accomplished in a state court prior to removal." *D.H. & Co. v. Gottdiener*, 462 F.3d 95, 108 (2d Cir. 2006). Section 1450 is designed to promote judicial economy by making it unnecessary to duplicate motions previously filed in state court, and to ensure that interlocutory orders entered by the state court to protect various rights of the parties will not lapse upon removal. *See generally* 29A *Fed. Proc., L. Ed.* §69:97 (discussing policy reasons for Section 1450); 2 *Cyc. of Federal Proc.* § 3:130 (3d ed 2025) (same); *Tehan v. Disability Mgmt. Servs., Inc.*, 111 F.Supp.2d 542, 550 (D.N.J. 2000) (same).

Likewise, the law of the case doctrine provides that when a court decides an issue, that decision should continue to govern the same issues in subsequent stages in the same case. *Arizona v. California*, 460 U.S. 605, 619 (1983). A court may depart from the law of the case for "cogent" or "compelling" reasons including an

[6] "Whenever any action is removed from a State court to a district court of the United States, . . . [a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."

intervening change in law, availability of new evidence, or the need to correct a clear error or prevent manifest injunctive. *Doe v. New York City Dept. of Social Services*, 709 F.2d 782, 789 (2d Cir. 1983), *cert. denied,* 464 U.S. 864 (1983). The law of the case doctrine applies as well to pre-removal state court orders. *Tehan*, 111 F.Supp.2d at 550; 18 *Moore's Federal Practice* § 134.22[3][c]i] (3d ed. 1999) ("When an action is removed from a state court to a federal court, the law of the case doctrine applies to the decisions entered by the state court prior to removal").

Here, the state court made the good cause determination ***before*** the case was removed, and therefore, this case came to the District Court as if the District Court had made the finding of good cause. The state court's September 19, 2024, decision had entered the restraint preventing Allstate from proceeding with its scheduled termination of the Agency Agreement pending a determination on Plaintiff's motion for preliminary injunctive relief (A.117-A.118) based on its finding that such order was necessary **"to maintain the status quo and prevent irreparable harm**." (A.118.) On January 8, 2025, after further briefing, two oral arguments, and initial written discovery, the state court heard oral argument on the preliminary injunction motion. (A.319-352.) Based on the extensive evidence presented by both sides, the state court decided that good cause continued to exist to **<u>extend</u>** the restraints to give the parties the opportunity to conduct further discovery, noting that the parties had briefed all the elements required for preliminary injunctive relief. (A.381.) The state

court specifically referenced its September 19, 2024 Order, which determined that the temporary injunctive relief was necessary "to maintain the status quo and prevent irreparable harm." (A.381.) Upon removal, this state court determination became a ruling by the District Court.

As stated by Judge Schwartz in *Bonechi v. Irving Weisdorf & Co.*, 1995 WL 731633, at *2 (S.D.N.Y. 1995), Rule 65's time limit on the effectiveness of a temporary restraining order clearly applies to those orders that are granted ex parte. There is no indication in Rule 65(b) that temporary restraining orders granted with notice to the defendant also must expire after this time period. *Id.* at *2. Only where there has been no notice or hearing, a TRO continued past the Rule 65 time limits would expire pursuant to the Rule. *In re Crim. Contempt Proc. Against Crawford*, 133 F.Supp.2d at 259.

In *Sampson*, the District Court entered a restraining order, and after an adversary hearing, extended the interim injunctive relief, with no limitation in time. *Sampson*, 415 U.S. at 63. The Supreme Court specifically held a temporary restraining order continued beyond the time permissible under Rule 65 must be treated as a preliminary injunction. *Id.* at 86. "[W]here an adversary hearing has been held . . . classification of the potentially unlimited order as a temporary restraining order seems particularly unjustified. Therefore, we view the order at issue her as a preliminary injunction." *Id*. at 86. Significantly, although it cited Rule

65, the Court did not hold that the restraining order had expired. Rather, it proceeded to review the merits of the order. That is because the order had been entered after a full contested adversary hearing on the preliminary injunction, just like the present case.

This tension between *Granny Goose* and *Sampson* was discussed in *In re Crim. Contempt Proc. Against Crawford*, 133 F.Supp.2d 249, 262 (W.D.N.Y. 2001). The court held that, because the "language in *Granny Goose* was only *dicta* (the TRO in *Granny Goose* was not, in fact, extended and therefore expired under Rule 65(b)), the Court shall follow the Supreme Court's holding in *Sampson*." *Id.* at n.15.

Here, after a full contested hearing on the merits of the preliminary injunction motion, in which the parties submitted evidence, briefing, and oral argument on all of the elements, Justice Jamieson made clear that she was supplanting the original temporary restraining order with an order of unlimited duration maintaining the restraints pending further discovery and further consideration of the preliminary injunction motion.

The state court judge made this decision after considering all of the extensive affidavits filed by the parties, including four affidavits of James Lukezic (A.56-A.68; A.119-A.126; A.127-A.132; A.220-A.248; A.249-A.275), extensive briefing by the parties (A.4-A.5), and after the state court conducted four separate court hearings and three oral arguments on the request for injunctive relief. (A.90-A.116; A.276-

A.288; A.302-A.318; A.319-A.352.)

Accordingly, the TRO did ***not*** cease to exist after the 14-day limit in Rule 65(b)(2) expired, and Rule 65(b)(2) and *Granny Goose* did not apply, because it was no longer an ex parte temporary restraining order because the court had already conducted a contested adversary proceeding based on evidence present by both sides, with a full presentation of legal and factual arguments on both sides.

Moreover, even assuming arguendo that Rule 65(b)(2) did apply, which it did not, the state court had already entered an order which found good cause to extend the temporary restraining order pending further discovery and a determination on the motion, which would have satisfied the requirements of Rule 65(b)(2) in any case. Based on Section 1450, as well as the law of the case doctrine, which applies to pre-removal state court orders, *see, e.g, Torah Soft Ltd. v. Drosnin*, 224 F.Supp.2d 704, 710 (S.D.N.Y. 2002); 18 *Moore's Federal Practice* § 134.22[3][c]i] (3d ed. 1999), the District Court should have credited the state court's finding in its original September 2024 order, and in its subsequent January 2025 Order, that, absent the entry of injunctive relief, the Appellant will suffer irreparable harm and that the restraint was necessary to maintain the status quo. (A.381.)

Applying these principles, in *Tehan v. Disability Mgmt. Servs., Inc.*, 111 F.Supp.2d 542, 550 (D.N.J. 2000), the plaintiff obtained temporary restraints against the defendants from terminating benefits. The plaintiff filed an amended petition,

and set a further hearing date. On that date, the court heard oral argument and after hearing oral argument, made an oral decision finding good cause to continue the restraints. After the action was removed, defendants moved to dissolve the state court's restraints. The district court reasoned that when the case was removed, the interlocutory state court orders were transformed by operation of Section 1450 into appealable orders of the federal district court. *Id.* at 548. Further, under the law of the case doctrine, the orders must be given deference, absent a showing that dispositive factual matters were overlooked or there was a change in circumstances. *Id.* at 549-550. Accordingly, the district court denied the application to dissolve the restraints. *Id.* at 551. *See also Does 1-9 v. Kappa Alpha Theta Fraternity Inc.*, 2022 WL 3448638, at *2 (N.D. Tex. 2022) (extending the state court's pre-removal TRO for good cause, noting state court already determined plaintiffs met the requirements for a TRO and that appropriate deference should be extended to the state court's order to prevent injustice); *Santos v. Reverse Mortg. Sols., Inc.*, 2012 WL 4891597, at *6-7 (N.D. Cal. 2012) (defendant did not demonstrate any change in the law or circumstances to justify dissolving the state court order granting injunctive relief); *Am. Sys. Consulting, Inc. v. Devier*, 514 F. Supp. 2d 1001, 1010 (S.D. Ohio 2007) (good cause to continue the state court's TRO enforcing a non-compete agreement, crediting the state court's finding the Plaintiff will suffer irreparable harm); *Xtria, LLC v. Int'l Ins. All., Inc.*, 2009 WL 4756365, at *5 (N.D. Tex. 2009) (extending the

state court's pre-removal TRO, explaining pre-removal state-court rulings are entitled to deference).

Here, like the order in *In re Crim. Contempt Proc. Against Gerald Crawford*, "[t]he TRO itself could not have been any clearer with respect to its intended duration, as it explicitly stated that it was to "remain in full force and effect until modified by further Order, or until resolution of plaintiffs' motion for preliminary injunction." *In re Crim. Contempt Proc. Against Gerald Crawford,* 329 F.3d at 139.

Therefore, the District Court abused its discretion in granting the motion to dissolve and the restraints should have stayed in place.

## VIII. ALTERNATIVELY, THE DISTRICT COURT HAD JURISDICTION TO CONDUCT A PRELIMINARY INJUNCTION HEARING AND ABUSED ITS DISCRETION IN DECLINING TO CONSIDER THE MOTION FOR PRELIMINARY INJUNCTION

Even assuming hypothetically, there was grounds to vacate Judge Jamieson's order (which there was not), then the District Court should have proceeded to conduct a preliminary injunction hearing. It is black-letter law that pre-removal motions are still pending in federal court after removal and are ripe to be decided. *GGC Intl'l Ltd. v. Ver*, 2025 WL 81319, at *1 (S.D.N.Y. 2025); *Sun Forest Corp. v. Shvili*, 152 F.Supp.2d 367, 387 (S.D.N.Y. 2001); 2 *Cyc. of Federal Proc*. § 3:131 (3d ed. 2025); 28 U.S.C. § 1450. The motion for a preliminary injunction was already pending when the case was removed to federal court. Motions that were pending in state court are still considered pending when removed to federal court. *GGC Int'l*

*Ltd.,* 2025 WL 81319, at *1; *see generally* 2 *Cyc. of Federal Proc*. § 3:131 (3d ed. 2025) ("The federal court will resume hearing motions begun in state court that remained undecided at time of the removal"). In its second order, which refused to proceed with the hearing on the preliminary injunction, the District Court attempted to justify its decision on the ground that Rule 65, which requires the district court to proceed to a preliminary injunction hearing within a certain amount of time after an ex parte temporary restraining order, did not apply to this situation where there was already a contested hearing, holding that Rule 65(b) was "inapplicable." (SpA.14.)

That is exactly the reason why the District Court should ***not*** have vacated Judge Jamieson's order in the first place.

Further, contrary to the District Court's Order, the District Court was not divested from jurisdiction to consider the motion for a preliminary injunction. When a party brings a motion for preliminary injunction combined with a stop-gap request for temporary restraining order, the crux of the motion is the request for the preliminary injunction. The fact that the court denies the stop-gap request for a temporary restraining order does not impact or affect the movant's due process right to move forward with a hearing on the merits of the preliminary injunction motion. A court may deny a request for a temporary restraining order but then proceed to hear and decide the motion for preliminary injunction. As the federal bankruptcy judge, Honorable C. Timothy Corcoran III, explained,

> "If the court denies the TRO and the reason for the denial would not as a matter of law preclude the issuance of a preliminary injunction, the court will schedule for hearing the motion for preliminary injunction or otherwise determine how it will consider that motion."

"Preliminary Injunctions and Temporary Restraining Orders", View From the Bench, Tampa Bay Bankruptcy Association, The Cramdown. *See also*, "Temporary Injunctive Relief: Initial Considerations", Westlaw Practical Law Practice Note w-007-7081 ("the denial of a TRO does not technically impact the possibility of obtaining a temporary injunction").

While the general rule is that the filing of a notice of appeal terminates the district court's consideration of those matters on appeal, Congress permits, as an exception to the general rule, that the district court retains jurisdiction from an order granting or denying a preliminary injunction. *New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir. 1989), *cert. denied*, 495 U.S. 947 (1990). Further, the "divestiture of jurisdiction rule…is not a per se rule." *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996), *cert. denied*, 520 U.S. 1188 (1997). The rule is judicially crafted and is "rooted in the interest of judicial economy." *Id.* Therefore, "its application is guided by concerns of efficiency and is not automatic." *Id.* (internal citations omitted).

Here, while the District Court held that the TRO expired, and even assuming arguendo that decision was correct (which it was not), then it should have proceeded to hold a hearing on the motion for preliminary injunction. While there may be

overlapping legal issues between the matter on appeal and a preliminary injunction motion before the District Court, overlapping legal issues do not automatically divest the Court of its jurisdiction. *New York v. United States Dep't of Homeland Sec.*, 475 F.Supp.3d 208, 224 (S.D.N.Y. 2020).

Here, as argued *supra*, the state court already had a hearing on the preliminary injunction and found that there was good cause to maintain the restraints. While Appellant appealed the District Court's Opinion and Order that the TRO expired, the District Court should have then proceeded to hear the motion for a preliminary injunction because "[o]rdinarily an interlocutory injunction appeal under Section 1292(a)(1) does not defeat the power of the trial court to proceed further with the case." Wright & Miller, 16 *Fed. Prac. & Proc. Juris*. § 3921.2 (3d ed. 2025) (citing cases).

The fact that the order granting or dissolving a temporary restraining order was on appeal did not divest the district court with authority to proceed in the case to issue a preliminary injunction during the appeal.

## IX. CONCLUSION

For all the foregoing reasons, this Court should reverse and vacate the District Court's May 21, 2025 opinion which dissolved Justice Jamieson's January 23, 2025 order because, as the District Court held in its own subsequent (June 2, 2025) order,

Rule 65(b)(2) did not apply, and enter any other relief consistent with the interests of justice.

Respectfully submitted,

**WUERSCH & GERING LLP**

*/s/ David T. Azrin*

David T. Azrin
Wuersch & Gering LLP
Wall Street Plaza
88 Pine Street, 20th Floor
New York, N.Y. 10005
Tel. (212) 509-4745
Fax. (212) 509-9559
Email: David.Azrin@wg-law.com
*Attorneys for Plaintiff Old Slip Benefits & Insurance Services, LLC*

## CERTIFICATION OF COMPLIANCE WITH RULE 32(a)(7)

I certify pursuant to Fed. R. App. P. 32(a)(7)(C) that the attached brief is proportionally spaced, has a typeface of Times New Roman of 14 points and contains 6,222 words excluding as permitted under Fed. R. App. P. 32(a)(7)(B) the table of contents, table of authorities, and certificate of compliance as counted by the Microsoft Word processing system used to produce this brief.

Dated: New York, New York
August 01, 2025

Respectfully submitted,

/*s/ David T. Azrin*
David T. Azrin

# SPECIAL APPENDIX

TABLE OF CONTENTS – SPECIAL APPENDIX

Table of Contents ........................................................................................i

Opinion and Order, Hon. Jessica G. L. Clarke, U.S.D.J. (May 21, 2025)....................................................................................SpA.1

Order [Clerk] (May 30, 2025) .........................................................SpA.11

Opinion and Order, Hon. Jessica G. L. Clarke, U.S.D.J. (Jun. 2, 2025)......................................................................................SpA.12

Amended Order [Clerk] (Jun. 24, 2025) ...........................................SPA.26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLD SLIP BENEFITS & INSURANCE SERVICES, LLC,<br>Plaintiff,<br>-against-<br>ALLSTATE INSURANCE COMPANY, REGINE MARIE NAPOLEON, BRITTANY CLEERE, MARC STEVENSON, and ALLISON ANN MCMAHON,<br>Defendants. | 25-CV-1110 (JGLC)<br>**OPINION AND ORDER** |

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff Old Slip Benefits & Insurance Services LLC brings this suit against Allstate Insurance Company to prevent an alleged unlawful termination of a franchise agreement between the parties. Before the case was removed to federal court, a state court judge issued a temporary restraining order preventing termination of that agreement in order to maintain the status quo pending resolution of Plaintiff's preliminary injunction motion. The TRO was initially issued eight months ago and reaffirmed again in January 2025 with no set expiration date. The case was then removed to federal court on February 7, 2025. Because the Federal Rules of Civil Procedure govern the expiration of the TRO, the TRO expired fourteen days later, and Plaintiff never sought to extend it before its expiration. The Court therefore agrees with Defendant that the TRO has expired. Nevertheless, the Court stays the effect of this decision to allow Plaintiff time to seek a stay before the Second Circuit. Additionally, and for the reasons stated below, the Court denies Defendant's request to maintain under seal a redacted manual that is relevant to this case and was already made public in another action.

## BACKGROUND

### I. Factual Background

Plaintiff Old Slip Benefits & Insurance Services LLC ("Old Slip") is owned by James Lukezic, a financial services professional who holds various securities licenses and began his own practice in 2016. ¶¶ 9–10.[1] In 2023, Lukezic decided to purchase the assets of two existing Allstate Insurance Company ("Allstate" or "Defendant") agencies in Westchester County, New York. ¶ 11. To do so, he formed Old Slip as the entity that would own and operate his new Allstate franchised business. *Id.* Old Slip entered into an Exclusive Allstate Franchise Agreement ("EA Agreement") with Allstate on February 21, 2024, which was effective on March 1, 2024. ¶ 18; ECF No. 15-5 at I.A. During the sales process, Lukezic informed Allstate that his Allstate agency would only be offering insurance products and that he owned a separate diversified financial services firm. ¶ 12. Additionally, Allstate's marketing led Plaintiff to believe that Allstate offered it a long-term relationship that would not be terminated unless Old Slip breached its obligations. ¶ 18.

The EA Agreement states that Old Slip "will not, either directly or indirectly, solicit, sell, or service insurance of any kind for any other company, agent, or broker, or refer a prospect to another company, agent, or broker, without the prior written approval of the Company." ECF No. 15-5 at I.E. The EA Agreement also states that the agreement may be terminated "by either party, with or without cause, upon providing ninety (90) days prior written notice to the other, or such greater number of days as required by law." *Id.* at XVII.B.2. Upon such written notice, the EA Agreement requires that Old Slip, upon Allstate's request, cease to act or to represent itself in any

[1] All paragraph references herein refer to the Amended Complaint at ECF No. 14-2 unless otherwise noted.

Case: 25-1320, 08/01/2025, DktEntry: 48.1, Page 40 of 54

way as an agent or representative of Allstate. *Id.* Plaintiff began operations pursuant to the EA Agreement in March 2024. ¶ 11.

Within a month of Old Slip beginning operations, an Allstate salesperson demanded that Lukezic cease offering financial services products other than Allstate's and transfer all of his financial services customers to Allstate's separate financial service company. ¶ 32. The salesperson also informed Lukezic that he had to relinquish his FINRA licenses and bring all of his investment advisory clients to Allstate. *Id.* Lukezic declined to do so because such requests directly contrasted his discussions with Allstate during the sales process. ¶ 33. As a result, on June 25, 2024, Allstate issued Old Slip a termination letter for unauthorized brokering by maintaining an outside business interest. ¶ 36. The termination was scheduled to go into effect on September 30, 2024. ¶ 42. Fearing irreparable harm in the form of destruction of his business, loss of jobs, liability to third parties, loss of future opportunities, and a permanent negative mark on Lukezic's record with the Department of Financial Services, Plaintiff filed this action. *See* ¶¶ 42–43.

## II. Procedural History

Plaintiff first brought this case in Westchester County Supreme Court on September 12, 2024, against Allstate and several individual defendants. ECF No. 14-1. That same day, Plaintiff moved for a temporary restraining order ("TRO") by order to show cause and for a preliminary injunction. ECF No. 15-1. On September 20, 2024, pending a hearing and determination of Plaintiff's motion for preliminary injunctive relief, Justice Linda Jamieson granted a TRO "in order to maintain the status quo and prevent irreparable harm." ECF No. 15-9 at 2.

Shortly thereafter, the individual defendants, along with Allstate, moved to dismiss Plaintiff's complaint for failure to state a claim, among other grounds. ECF No. 17-1. On

January 23, 2025, Justice Jamieson dismissed the claims against all individual defendants and dismissed all but two claims against Allstate. ECF No. 17-7. Despite the motion being fully briefed and after hearing oral argument, Justice Jamieson expressly did not rule on Plaintiff's preliminary injunction motion. Instead, she decided that "discovery regarding plaintiff's remaining claims against Allstate [was] warranted before the Court [could] render a determination on the merits of plaintiff's [preliminary injunction] motion." *Id.* at 29. In other words, Justice Jamieson intended to leave the TRO in place for an indefinite period.

On February 7, 2025, after all the individual defendants were dismissed, Allstate removed the case to this Court based on diversity jurisdiction. ECF No. 1. One month later, Defendant moved to declare the TRO expired, or alternatively, for an order dissolving it. ECF No. 12 ("TRO Mem."). Plaintiff opposed the motion and filed an alternative request that if the Court were to grant Defendants' motion that it stay the effectiveness of such a decision. ECF Nos. 21 ("TRO Opp."), 22 ("Stay Mem."). As part of the briefing of these issues, Defendant filed a largely redacted version of an Allstate Manual relevant to the parties' briefing. Defendant seeks to maintain that document under seal. *See* ECF Nos. 25 ("TRO Reply"), 26 ("Redact Mem."). The Court heard oral argument on the parties' motions on May 8, 2025, and on May 16, 2025, Plaintiff filed additional authority with the Court in response to the Court's inquiry at oral argument. ECF Nos. 44, 45.

## DISCUSSION

The Court first addresses Defendant's motion for an order declaring that the TRO expired, finding that under Federal Rule of Civil Procedure 65, the TRO expired fourteen days after the case was removed to federal court. The Court nonetheless stays effect of its order so that

Plaintiff may seek relief from the Second Circuit. The Court then addresses and denies Defendant's request to file a redacted version of the Allstate Manual.

**I. The Temporary Restraining Order Has Expired**

As the Second Circuit has made clear, a "temporary restraining order issued by a state court prior to removal remains in force after removal no longer than it would have remained in effect under state law, but in no event does the order remain in force longer than the time limitations imposed by Rule 65(b), measured from the date of removal." *Uniformed Fire Officers Ass'n v. de Blasio*, 973 F.3d 41, 47 (2d Cir. 2020) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439–40 (1974)). Under Rule 65(b), TROs last no longer than 14 days, unless before the expiration the TRO is extended for good cause for up to another 14 days or unless the adverse party consents to a longer extension. In sum, "[t]emporary restraining orders entered prior to removal expire *at the earlier of* 14 days from the date of removal or the date set by the state court." *Herrick v. Grindr, LLC*, No. 17-CV-932 (VEC), 2017 WL 744605, at *2 (S.D.N.Y. Feb. 24, 2017) (emphasis added).

Here, this action was removed on February 7, 2025, and without any timely request for an extension, the TRO expired on February 21, 2025. As courts have cautioned, "[t]he plaintiff must be ever alert to this, so as to take whatever steps are necessary to satisfy the now-applicable federal requirements and assure that the TRO does not lapse before the preliminary injunction hearing comes on." *Carrabus v. Schneider*, 111 F. Supp. 2d 204, 211 (E.D.N.Y. 2000) (quoting David D. Siegel, *New York Practice* § 640 at 1105–06 (3d ed. 1999)). Plaintiff failed to request an extension of the TRO before it expired and likewise failed to timely seek a hearing in this Court on its preliminary injunction motion.

None of the arguments Plaintiff raises to escape this conclusion have merit. Plaintiff first argues, and the Court seriously considered, whether Justice Jamieson's order extending the TRO

indefinitely was effectively a preliminary injunction that should remain in place. When Justice Jamieson extended the TRO indefinitely, the preliminary injunction motion was fully briefed (including affidavits and other evidentiary submissions), and she had held oral argument on the motion. She appeared to have all the relevant briefing before her when she decided to extend the TRO further. She also determined that this preliminary relief should stay in place while the parties engaged in an indefinite period of discovery. Such an order has the hallmarks of a preliminary injunction in federal court. Plaintiff contends that in order for this court to give full effect to all actions and procedures accomplished in state court before removal, the Court must treat Justice Jamieson's decision as a preliminary injunction. ECF No. 24:4–25:24.

However, Justice Jamieson expressly declined to grant Plaintiff a preliminary injunction. Instead, she concluded that "discovery regarding plaintiff's remaining claims against Allstate [was] warranted before the Court [could] render a determination on the merits of plaintiff's motion." ECF 17-7 at 29. Justice Jamieson notably did not analyze the factors for preliminary injunction as required under the applicable procedural rule. *See* N.Y. C.P.L.R. 6312(c) (MCKINNEY 2019) ("[T]he court shall make a determination by hearing or otherwise whether each of the elements required for issuance of a preliminary injunction exists."). And, the fact that the TRO had no express end date does not conflict with any applicable state rule. *Compare* N.Y. C.P.L.R. 6313 (MCKINNEY 2019) ("Upon granting a temporary restraining order, the court shall set the hearing for the preliminary injunction *at the earliest possible time*.") (emphasis added), *with* FED. R. Civ. P. 65(b)(2) ("The order expires at the time after entry—*not to exceed 14 days*—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension.") (emphasis added). As such, the extension of the TRO pending further discovery did not, as Plaintiff argues, transform the TRO into the

equivalent of a federal court-enforceable preliminary injunction. TRO Opp. at 14. Instead, the state court's TRO simply remained in effect following Justice Jamieson's January 2025 decision. Plaintiff seeks to give full effect to Justice Jamieson's order, and construing the order as a TRO does that. *See* ECF No. 45 at 24:4–5; TRO Opp. at 13.

Plaintiff next urges the Court to retroactively extend the TRO for good cause. TRO Opp. at 14–27. However, as Rule 65 makes clear, a party must request an extension for good cause *before* the TRO expires. *See* FED. R. CIV. P. 65(b). Plaintiff failed to do so here. Even if Plaintiff had made a timely request, the Court, unless consent is obtained, can only extend a TRO for good cause for a "like period," which the Supreme Court has interpreted to mean only up to fourteen (14) additional days. *See In re Crim. Contempt Proc. Against Crawford, Warren*, 329 F.3d 131, 136 (2d Cir. 2003) (citing *Granny Goose*, 973 F.3d at 440 n.15); *de Blasio*, 973 F.3d at 47 ("We note that Rule 65(b)(2) was amended in 2009 to change the expiration of a TRO (unless extended) from ten to fourteen days."). That period expired long ago.

Lastly and relatedly, Plaintiff contends that the Court can extend the TRO indefinitely because Justice Jamieson already determined there was good cause to do so. But Plaintiff fails to cite any Federal Rule that would permit this Court to allow a TRO to remain in place indefinitely without the consent of the opposing party. As the Supreme Court made clear, although Plaintiff has a right to maintain the relief it obtained in state court after removal, Defendant "[b]y the same token. . . ha[s] a right to the protections of time limitation in Rule 65(b) once the case was removed to federal court." *Granny Goose*, 973 F.3d at 439. Those time limits expressly prohibit the result Plaintiff seeks here. Therefore, Defendant's motion is granted. The Court will, however, stay the effect of this decision for two weeks to allow Plaintiff to seek a stay before the Second Circuit. The Court denies Plaintiff's requested relief for a longer stay pending appeal.

Although allowing the termination of the parties' agreement will certainly harm Plaintiff and the livelihood of its employees, all other factors weigh against Plaintiff's requested stay. *See New York v. United States Dep't of Homeland Sec.,* 974 F.3d 210, 214 (2d Cir. 2020) ("[A] stay is not a matter of right, even if irreparable injury might otherwise result; rather, a stay is an exercise of judicial discretion, and the party requesting a stay bears the burden of showing that the circumstances justify an exercise of discretion.") (cleaned up) (internal citation and quotation marks omitted).

## II. Defendant's Motion to File a Redacted Version of the EA Manual Is Denied

Defendant seeks leave to file a redacted version of Exhibit A to the TRO Reply, which is a copy of Allstate's Exclusive Agency Independent Contractor Manual ("EA Manual"). Redact Mem. at 1. In its TRO Reply, Allstate cites to three pages of the EA Manual's forty-eight (48) pages and contends that the rest of the document contains "highly confidential and commercially sensitive information about a variety of subjects important to Allstate's relationship with its exclusive agents." *Id.* Defendant asserts that the information in the EA Manual could cause Allstate harm by providing competitors with insight into its relationship with its exclusive agents. *Id.* at 2. It further asserts that Allstate's interest in protecting its confidential business information weighs in favor of the redactions and that the public interest in access is outweighed as the redacted portions are not necessary to evaluate Allstate's pending TRO motion. *Id*.

Plaintiff opposes Defendant's request, asserting that Allstate has failed to satisfy its heavy burden to show that the entire remaining portions of the EA Manual constitute a trade secret or confidential information, and that the asserted harm outweighs the presumption of public access. ECF No. 33 at 2. The Court agrees. Here, the exhibit was filed in connection with Defendant's briefing on the validity of the TRO and is likely to be referenced again in this matter. The parties'

dispute centers their exclusive agency relationship, and it is natural that the EA Manual will be relevant to this case's resolution. *See* ECF No. 45 at 43:22–24. As such, the Court concludes that the document is a judicial document, and thus the presumption of public access applies. *See Sec. & Exch. Comm'n v. Telegram Grp. Inc.*, No. 19-CV-9439 (PKC), 2020 WL 3264264, at *1 (S.D.N.Y. June 17, 2020) (noting that documents filed in connection with motions are subject to a substantial presumption of public access).

"[S]pecific business information and strategies [that] may provide valuable insights into a company's current business practices that a competitor would seek to exploit" warrants confidential treatment. *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (internal citation and quotation marks omitted). Here, however, Defendant redacts nearly the entire document without any particularity. *Cf. id.* (authorizing plaintiffs' proposed redactions, which were generally limited to specific business information and strategies). Additionally, a prior version of the EA Manual, which substantially mirrors the current version, has already been made public. *Khalil v. Allstate*, No. 20-CV-09409 (C.D. Calif. 2022), ECF No. 63-3. Defendants fail to explain what competitive harm exists where most of the document is already public, and public documents may not be redacted. *See In re Telegraph Media Grp. Ltd.*, No. 23-MC-215 (JGLC), 2023 WL 5770115, at *6 (S.D.N.Y. Sept. 6, 2023) (denying a motion to seal information that was already a matter of public record); *Louis Vuitton*, 97 F. Supp. 3d at 511 ("[T]here is no justification for keeping the information that has already been public under seal."). As such, the Court finds that the proposed redactions are unwarranted and Defendant's motion for leave to file a redacted version of the EA Manual is DENIED.

**CONCLUSION**

For the foregoing reasons, the Court finds that the state court's TRO has expired. The Court, however, stays the effect of this Order until June 5, 2025, at Plaintiff's request, to permit Plaintiff to seek an emergency stay from the Second Circuit. Defendant's motion to file a redacted version of Exhibit A to their TRO Reply is DENIED, and Defendant is hereby ORDERED to file the unredacted version of Exhibit A to their TRO Reply by no later than May 26, 2025. The Clerk of Court is respectfully directed to terminate ECF Nos. 12, 22, and 26.

Dated: May 21, 2025
New York, New York

SO ORDERED.

Jessica Clarke

JESSICA G. L. CLARKE
United States District Judge

# UNITED STATES COURT OF APPEALS
# FOR THE
# SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of May, two thousand twenty-five.

Before: Maria Araújo Kahn,
*Circuit Judge.*

---

Old Slip Benefits & Insurance Services, LLC,

Plaintiff - Appellant,

v.

Allstate Insurance Company, Regine Marie Napoleon, Brittany Cleere, Marc Stevenson, Allison Ann McMahon,

Defendants - Appellees.

---

**ORDER**

Docket No. 25-1320

Appellant moves for a stay of the district court's May 21, 2025 order pending appeal. Appellee opposes the motion.

IT IS HEREBY ORDERED that the motion is REFERRED to the next available three-judge motions panel. The Court grants a temporary stay of the district court's order until the motion is reviewed and decided by the motions panel.

For the Court**:**
Catherine O'Hagan Wolfe,
Clerk of Court

[Seal: UNITED STATES SECOND CIRCUIT COURT OF APPEALS] Catherine O'Hagan Wolfe

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

Catherine O'Hagan Wolfe

CERTIFIED COPY ISSUED ON 05/30/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OLD SLIP BENEFITS & INSURANCE SERVICES, LLC,

Plaintiff,

-against-

ALLSTATE INSURANCE COMPANY, et al.,

Defendants.

25-CV-1110 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

The Court has closely reviewed the parties' briefing at ECF Nos. 50, 52, and 55 regarding Plaintiff's request for an immediate hearing on its preliminary injunction motion. Plaintiff's application is denied.

As an initial matter, the Court already ruled against this requested relief, *see* ECF No. 48 at 5, and the Court finds no basis to reconsider that ruling.

Additionally, the Court is divested from jurisdiction with respect to Plaintiff's request. Plaintiff has appealed the Court's ruling, and the issue of the status of the preliminary relief Plaintiff obtained is pending before the Second Circuit. It is well-settled that "it is a waste of judicial resources for two courts to be considering the same issues in the same case at the same time[.]" *New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1349 (2d Cir. 1989). It is for that reason that a notice of appeal will "divest[] the district court of jurisdiction respecting the questions raised and decided in the order that is on appeal." *Id.* at 1350. The issue of "divestiture of jurisdiction" is "rooted in the interest of judicial economy" and although it is not automatic, it "is guided by concerns of efficiency." *New York v. U.S. Dep't of Homeland Sec.*, 475 F. Supp. 3d 208, 224 (S.D.N.Y. 2020) (internal citations and quotation marks omitted).

Here, the issue of Plaintiff's request relief is pending before the Second Circuit. *See* ECF No. 56. Any decision by the Second Circuit will dictate whether Plaintiff can properly seek the relief in its preliminary injunction request. Either the Second Circuit will agree that the temporary restraining order expired long ago, and no preliminary injunction is in place, in which case Plaintiff's requested relief in its preliminary injunction motion is moot. Plaintiff would then need to seek new relief—namely, an order requiring Allstate to reinstate its contract with Plaintiff. This extraordinary relief has not yet been requested (nor could it have been) and has not been briefed before this Court or the state court. Or, the Second Circuit will agree with Plaintiff that the TRO remains in place, in which case the Court would thereafter hold a hearing on the preliminary injunction. Or, if the Second Circuit determines that Justice Jamieson's ruling is in effect a preliminary injunction, then any preliminary injunction hearing would be unnecessary. Holding a hearing now based on this uncertainty is extremely inefficient and a waste of judicial resources, making divestiture appropriate.

The case—*Broker Genius, Inc. v. Seat Scouts LLC*—relied on by Plaintiff is particularly instructive. No. 17-CV-8627 (SHS), 2019 WL 452050 (S.D.N.Y. Feb. 5, 2019). There, the court concluded it was permitted to proceed on the merits while an appeal of a preliminary injunction entered in the case was pending. *Id.* at *2. The case went to trial, and the defendants were found liable. The plaintiff then sought to reduce the amount of security it posted for the preliminary injunction. The court concluded that it was divested from jurisdiction to do so because the preliminary injunction remained on appeal. *Id.*

Here, the Court likewise concludes that it may proceed with the merits of this case, but not Plaintiff's requested preliminary relief. The Court has already held an initial pretrial conference and entered the parties' proposed case management plan. The parties will proceed

toward trial. The Court only refrains from addressing Plaintiff's requested preliminary relief. This approach is consistent with *Broker Genius* and the other cases Plaintiff relies on that stand for the proposition that the Court is not completely divested from jurisdiction based on an interlocutory appeal.

Plaintiff also cites *Kidder* and *New York v. U.S. Dep't of Homeland Sec.,* which do not mandate a different result. In those cases, the courts issued preliminary injunctions while an interlocutory appeal was pending in quite different circumstances. In *Kidder*, the Court issued a preliminary injunction to preserve the status quo. *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 565 (2d Cir. 1991). Here, the Second Circuit has already temporarily stayed the effect of the Court's order. And, in *New York*, the court issued a preliminary injunction when the plaintiffs sought new relief based on new intervening facts. *New York v. United States Dep't of Homeland Sec.,* 475 F. Supp. 3d 208, 224–225 (S.D.N.Y. 2020). The facts here have not changed.

Lastly, even if the Court is not divested from jurisdiction with respect to this issue, the Court, in its discretion, declines to address Plaintiff's potentially moot request for the reasons stated above. And no rule requires otherwise. During the initial pretrial conference, Plaintiff's counsel repeatedly stated that the Court was ***required*** to hold a preliminary injunction hearing as soon as practicable, citing Federal Rule of Civil Procedure 65(b)(3). That argument did not appear in Plaintiff's briefing—and for good reason. That rule applies for temporary restraining orders issued without notice, which is inapplicable here. *See* FED. R. CIV. P. 65(b)(3). For this same reason, the Court declines to hold a hearing in order to provide an indicative ruling under Federal Rule of Civil Procedure 62.1.

As such, the Court denies Plaintiff's requested relief and will revisit this issue after further ruling from the Second Circuit. The Clerk of Court is respectfully directed to terminate ECF No. 50.

Dated: June 2, 2025
New York, New York

SO ORDERED.

Jessica Clarke

JESSICA G. L. CLARKE
United States District Judge

**UNITED STATES COURT OF APPEALS
FOR THE
SECOND CIRCUIT**

---

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of June, two thousand twenty-five,

---

Old Slip Benefits & Insurance Services, LLC,

Plaintiff - Appellant,

v.

Allstate Insurance Company, Regine Marie Napoleon, Brittany Cleere, Marc Stevenson, Allison Ann McMahon,

Defendants - Appellees.

---

**AMENDED ORDER**
Docket Nos. 25-1320 (Lead)
25-1417 (Con)

Appellant Old Slip Benefits & Insurance Services LLC moves for a stay pending appeal of the district court's order declaring that a state court-issued temporary restraining order had expired under Federal Rule of Civil Procedure 65(b). Appellee Allstate Insurance Company opposes.

Upon due consideration, it is hereby ORDERED that decision on the motion is DEFERRED and the motion is referred to the merits panel to which the case is assigned upon completion of briefing. The parties are further ORDERED to comply with the following briefing schedule. *See* Fed. R. App. P. 2. Appellant's brief must be filed by August 1, 2025. Appellee's brief must be filed by September 8, 2025. Appellant's reply, if any, must be filed within 14 days of the date Appellee's brief is filed. The Clerk of the Court is directed to schedule this appeal to be heard by the first available panel upon the completion of briefing.

The temporary stay issued by this Court on May 30, 2025, shall remain in effect while briefing proceeds.

For The Court:
Catherine O'Hagan Wolfe,
Clerk of Court

UNITED STATES SECOND CIRCUIT COURT OF APPEALS

Catherine O'Hagan Wolfe

## CERTIFICATE OF SERVICE

I hereby certify that one ( 1) copy of the following:

APPELLANT'S BRIEF AND SPECIAL APPENDIX
& APPENDIX ON APPEAL

was served upon Appellee's counsel via the Court's ECF System, as indicated, this 1st day of August, 2025, upon the following:

Christopher Young
Troutman Pepper Locke LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103.

and was served upon the pro se appellees hard copy via UPS Next Day Courier, as indicated, this 1st day of August, 2025, upon the following:

Regine Marie Napoleon
7525 153rd Street, Apartment 1137
Kew Gardens Hills, NY 11367

Brittany Cleere
149 Midtown Avenue
Summerville,, SC 29486

Marc Stevenson
6107 Aster Haven Circle
Haymarket, VA 20169

Allison Ann McMahon
206 Windwatch Drive
Hauppauge, NY 11788

Dated: August 1, 2025

*/ s / David Azrin*

DAVID AZRIN, ESQ.
*Attorney for Appellant*